IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,               )<br>                                         )<br>                    Plaintiff,          )<br>                                         )<br>      v.                                 )<br>                                         )<br>DAREN GLOSSER, et al.,                   )<br>                                         )<br>                    Defendants.         )<br>_____) | 2:05-cr-0309-GEB<br><br><br><u>ORDER</u> |

Defendants Daren Glosser and Shannon Selle are charged in a two-count Second Superceding Indictment with conspiring to manufacture and distribute marijuana, in violation of 21 U.S.C. § 841, and with manufacturing marijuana, in violation of 21 U.S.C. § 846. Defendants move to suppress evidence seized from Defendants' home, located at 10 Chimiles Trail, in Napa County, California, and any fruit, or leads derived therefrom.[1]  The government opposes the motion. For the following reasons, Defendants' motion is denied.

---

[1] The motion was originally filed on behalf of Defendant Glosser, but Defendant Selle has joined in the motion.

1

1  Defendants contend that the evidence seized from Defendants'
2 10 Chimiles Trail home should be suppressed because the warrant
3 authorizing the search of that home "was the product of careless
4 drafting; lacked probable cause for the search; and relied to an
5 unlawful extent upon stale information and affiant Crane's
6 conjecture."  (Mot. at 22.)  The government counters "that the
7 extensively detailed affidavit [supporting the search warrant]
8 contains an overabundance of facts that when combined establish ample
9 probable cause for issuance of the search warrant."  (Opp'n at 2.)
10  A judge's task in deciding whether there is probable cause
11 for the issuance of a search warrant is "simply to make a practical,
12 common-sense decision whether, given all the circumstances set forth
13 in the affidavit before him, . . . there is a fair probability that
14 contraband or evidence of a crime will be found in a particular
15 place."  New York v. P.J. Video, Inc., 475 U.S. 868, 876 (1986).  To
16 conduct the probable cause analysis, "the affidavit must be read as a
17 whole and given a common sense and realistic interpretation."  United
18 States v. Traylor, 656 F.2d 1326, 1330 (9th Cir. 1981).  "Probable
19 cause determinations are to be made by viewing the totality of the
20 circumstances set forth in the affidavit."  United States v. Stanert,
21 762 F.2d 775, 778 (9th Cir. 1985), amended by 769 F.2d 1410 (9th Cir.
22 1985).
23  The judge issuing a search warrant "need not determine that
24 the evidence sought is in fact on the premises to be searched . . . or
25 that the evidence is more likely than not to be found where the search
26 takes place . . . [but only that] it would be reasonable to seek the
27 evidence in the place indicated."  United States v. Terry, 911 F.2d
28 272, 275 (9th Cir. 1990) (quoting United States v. Peacock, 761 F.2d

1313, 1315 (9th Cir. 1985)). The initial judicial determination of probable cause to issue the warrant is treated with great deference, and may not be reversed unless the decision was clearly erroneous. United States v. McQuisten, 795 F.2d 858, 861 (9th Cir. 1986). In doubtful cases, preference should be given to upholding the validity of the warrant. United States v. Peacock, 761 F.2d at 1315.

The search warrant for 10 Chimiles Trail was issued on June 22, 2005 by Solano County Superior Court Judge Harry S. Kinnicutt, and was supported by an affidavit signed by City of Fairfield Police Officer Stephen Crane.[2] Crane's affidavit provided, in part, the following information:

(1) Crane had eleven years of law enforcement experience, including extensive training and experience in the area of drug enforcement, including marijuana grow operations, and at the time he applied for the warrant, he had worked on about 800 to 1,000 narcotics related investigations and testified in court on narcotics sales, and marijuana cultivation and sales. (Ex. A to Mot. and Ex. 1 to Opp'n, Bates pages 3006-3009.)

(2) In February 2004, four separate citizen informants reported suspicious activity in their neighborhood concerning two residences on Wailea Circle, which were owned by Defendant Glosser. (Id. at 3012-13.)

(3) In October 2004, a fifth informant (CI-5) stated (against his penal interest) that approximately four years earlier he/she trafficked and cultivated marijuana and sometimes sold upwards of ten pounds of marijuana in one transaction that he/she obtained from Glosser. (Id. at 3013.) CI-5 reported that Glosser's marijuana cultivation and distribution business involved numerous persons, including Defendant Selle. The identities of many of the others that CI-5 named were independently identified by Crane and other officers as individuals connected to Defendants' marijuana manufacturing and trafficking organization. (Id. at 3014, 3016).

---

[2] Defendants make much ado about the fact that there were seemingly two separate affidavits issued by Officer Crane in support of the search warrant. (Mot. at 2.) However, the government explains that "Crane submitted one affidavit containing a sealed portion and an unsealed portion." (Opp'n at 4.)

(4) CI-5 stated that six months earlier (approximately April 2004) he/she sought work from one of the named persons allegedly involved in Defendants' marijuana manufacturing and trafficking organization, who told CI-5 to contact Glosser because Glosser was looking for someone to assist in taking rocks used in the hydroponic growing of marijuana and unwanted marijuana plant trimmings to the garbage dump for disposal.  CI-5 described Glosser's landscape business as a "front" and said that Glosser's true source of income comes from the sale and cultivation of marijuana.  CI-5 stated he/she only worked for Glosser for a few months and did not make any garbage dump runs for him.  (Id. at 3014.) However, the information about loading garbage bags onto a truck corroborated the statements of some of the citizen neighbor informants.

(5) CI-5 said that Glosser and his associates had multiple houses in Fairfield with marijuana grow operations, including a home off of Gordon Valley Road, and that Glosser had numerous guns.  (Id. at 3014, 3015.)  Law enforcement later confirmed that Glosser and Selle lived at 10 Chimiles Trail, Napa County, which is off of Gordon Valley Road.  CI-5 also made numerous other statements that corroborated the statements of other informants and/or were independently corroborated.

(6) On April 19, 2005, CI-5 reported that he/she had been told on the day earlier that Glosser was looking for a lot of people to assist in trimming marijuana plants, and that Glosser had had a marijuana trimming party at Glosser's residence at 10 Chimiles Trail over the weekend of April 16-17, 2005.  CI-5 said that he/she was also advised that Glosser was going to have another trimming party on April 23-24, 2005, and an even larger trimming party the following weekend (April 30-May 1, 2005).  (Id. at 3018.)

(7) CI-6, a citizen informant, reported, during the course of the investigation that started in January 2004, that he/she heard what he/she believed to be weapons being fired from 10 Chimiles Trail.  (Id. at 3019.)  CI-6 also made numerous other statements that corroborated the statements of other informants and/or were independently corroborated.

(8) On five separate days -- February 10, 11, and 12, 2004, and January 9 and 13, 2005 -- Fairfield Police officers detected the strong odor of unburned marijuana emanating from Glosser's house at 2749 Wailea Circle.  (Id. at 3020-22, 3031-32.)

(9) On February 13, 2004, officers observed Glosser drive away from same house, engage in countersurveillance driving, and drive to the area of 10 Chimiles Trail.  (Id. at 3024.)

(10) On December 17, 2004, officers observed Selle engage in countersurveillance driving and use a payphone while conducting countersurveillance.  (Id. at 3030.)  On January

4

    14, 2005, one day after officers detected the odor of marijuana from 2749 Wailea Circle, officers saw Selle visit the property and then leave and engage in countersurveillance driving. (Id. at 3033.)

    (11) Glosser had convictions for possession of a controlled substance for sale (felony) and possession of a controlled substance (misdemeanor), and criminal history entries for transportation of controlled substances, delay/resist/obstruct law enforcement, providing false information, trespass, selling marijuana. (Id. at 3034.)

    (12) A review of electric power utility records for the months of August 2003 through March 2004 established that Defendants' 10 Chimiles Trail residence (and others) had histories of electrical energy usage "much higher than the average amount used at a typical residence." For many months, the electric bill approximated $1,000, or more, per month for each of the residences. (Id. at 3036.)

    (13) On March 31, 2005, Crane saw Glosser engage in countersurveillance techniques. (Id. at 3039.)

    (14) Crane opined that Defendants had been involved in a long-term criminal enterprise engaging in the large-scale cultivation and sale of marijuana for at least four, and most likely more, years. Crane believed that Defendants were still involved in the criminal enterprise and would have the evidence sought by the search warrant in their residence and vehicles. (Id. at 3041, 3044, 3045.)

    Reading the affidavit as a whole, there was, at the least, "a fair probability that contraband or evidence of a crime" would be found at the 10 Chimiles Trail residence; therefore, there was probable cause to issue a search warrant for that location. New York v. P.J. Video, Inc., 475 U.S. at 876. "Direct evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location." United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986). A judge issuing a search warrant "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." Id.

5

The Ninth Circuit has recognized that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." <u>United States v. Terry</u>, 911 F.2d 272, 275 (9th Cir. 1990). Additionally, CI-5's statements that approximately four years earlier CI-5 trafficked and cultivated marijuana and sometimes sold large amounts of marijuana that CI-5 obtained from Glosser; that Glosser's marijuana cultivation and distribution business involved numerous persons, including, Defendant Selle; that Glosser's landscape business was a "front" and that Glosser's true source of income comes from the sale and cultivation of marijuana; that Glosser and his associates had multiple houses with marijuana grow operations, including a home off of Gordon Valley Road, which is where 10 Chimiles Trail is located; and that CI-5 had been told that Glosser had held a marijuana trimming party at his 10 Chimiles Trail residence over the weekend of April 16-17, 2005 and was going to have trimming parties again on April 23-24, 2005, and on April 30-May 1, 2005, support the finding that there was probable cause for issuance of a warrant to search the 10 Chimiles Trail residence. See <u>United States v. Dozier</u>, 844 F.2d 701, 706 (9th Cir. 1988) ("[S]tatements . . . against . . . penal interest [are often] sufficiently credible to support a finding of probable cause to search.").

The information regarding marijuana odors emanating from Defendants' properties, the information regarding Defendants' countersurveillance driving, the information regarding Glosser's prior criminal arrests on drug charges, and the high electricity bill for the 10 Chimiles Trail residence, also aid in establishing probable cause for the issuance of the search warrant. <u>United States v. Kerr</u>, 876 F.2d 1440, 1445 (9th Cir. 1989) ("[T]he presence of the odor of

1  contraband may itself be sufficient to establish probable cause.");
2  United States v. Ocampo, 937 F.2d 485, 490 (9th Cir. 1991) (finding
3  that countersurveillance driving, tandem driving, a car switch, and
4  beeper calls make out probable cause for issuance of a search
5  warrant); United States v. Harris, 403 U.S. 573, 582 (1971)
6  (indicating that a suspect's prior arrests can be used to establish
7  probable cause that he committed a similar crime); United States v.
8  Calabrese, 825 F.2d 1342, 1349 (9th Cir. 1987) (noting that the
9  magistrate judge considered the significant increase in electrical
10 usage in issuing search warrant for methamphetamine laboratory); see
11 also Kerr, 876 F.2d at 1442 (recognizing that high electrical
12 consumption is involved in growing marijuana indoors); United States
13 v. Roberts, 747 F.2d 537, 546 (9th Cir. 1984) (discussing the fact
14 that a surge in electrical consumption normally occurs in indoor
15 marijuana grow operations).  Further, much of the information provided
16 by the citizen informants suggesting that evidence might be found at
17 the 10 Chimiles Trail residence was corroborated and/or interlocked
18 with information from the other citizen informants.  United States v.
19 Landis, 726 F.2d 540, 543 (9th Cir. 1984) ("Interlocking tips from
20 different confidential informants enhance the credibility of each.").
21         Defendants' argument that the evidence relied upon is stale
22 is unavailing.  (Mot. at 6.)  "A search warrant is not stale where
23 'there is sufficient basis to believe, based on a continuing pattern
24 or other good reasons, that the items to be seized are still on the
25 premises.'"  United States v. Angulo-Lopez, 791 F.2d 1394 (9th Cir.
26 1986).  "With respect to drug trafficking, probable cause may continue
27 for several weeks, if not months, of the last reported instance of
28 suspect activity."  Id.

7

1    Defendants' argument that the search warrant is invalid
2 since the affidavit contained "unsupported and conclusory opinions and
3 guesses put forward by Detective Crane" is also unavailing.  (Mot. at
4 9.)  The affidavit was based on much more than just the conclusions of
5 Officer Crane.  Moreover, "issuing judges may rely on the training and
6 experience of affiant police officers."  <u>United States v.</u>
7 <u>Chavez-Miranda</u>, 306 F.3d 973, 978 (9th Cir. 2002) (citing <u>United</u>
8 <u>States v. Gil</u>, 58 F.3d 1414, 1418 (9th Cir. 1995)).
9    Accordingly, Defendants' motion to suppress the evidence
10 seized at 10 Chimiles Trail is denied.[3]

Dated:  October 11, 2007

_____
GARLAND E. BURRELL, JR.
United States District Judge

---

[3] The government also argues that "the search warrant is protected from attack by the good faith exception in <u>United States v. Leon</u>, 468 U.S. 897 (1984)."  (Opp'n at 2.)  However, that argument need not be considered since Defendants' motion is denied on other grounds.

8